Good morning, Your Honors, and may it please the Court, Russell Eberton on behalf of the petitioner Imad Hanna. Mr. Hanna was granted protection under the Convention Against Torture, and his wife and two children were granted asylum because of the persecution and torture they suffered and will suffer in Iraq. The issue before the Court, and the only reason why he was denied asylum and withholding of removal, was the immigration judge and VIA's conclusion that he is subject to the persecutor bar, that he's ineligible for asylum or withholding of removal because he engaged in or assisted in the persecution of others. There are two broad reasons why that finding, why that conclusion, is incorrect. The first is the agency's adverse credibility finding, and the second is there's insufficient evidence that either Mr. Hanna or the Republican Guard to which he had belonged engaged in the persecution of others. The adverse credibility finding in Mr. Hanna's credibility Counsel, you're not challenging the conclusion that the Republican Guard was responsible for atrocities under Saddam Hussein. Isn't the question whether or not there's a sufficient nexus to show your client's active participation or knowledge of or encouragement in those atrocities? Well, I'm not here to defend the Republican Guard, and I agree they committed atrocities and tortured people and did terrible things. But isn't your challenge basically to the nexus prong, that the government simply did not show a sufficient personal involvement by your client in such atrocities? My argument is both that there's no nexus to Mr. Hanna's activities within the Republican Guard, but also that there's insufficient evidence in the record that the atrocities that the Republican Guard committed would actually qualify as persecution, as that term is defined. Seriously? You're going to attack whether or not what the Republican Guard did amounts to atrocities? I mean, we're talking about crimes against humanity here. I agree that it would be crimes against humanity, that it would be atrocities, but that's distinct from persecution. Here's the problem I have. Maybe I can get to the heart of it. He was in the Republican Guard for five years. I see a period of about five months, I think it's from January to May of 1991, when he says he deserted. But we've got a much broader period of time during which I think the record shows that the Republican Guard did engage in substantial acts of atrocities. But the question is, was your client involved in any of them? And that's what I'd like you to focus your argument on. I mean, does he have evidence to refute that or anything to show that he was nothing more than a baker? What do you got? The only evidence that was available to him, other than his testimony, was the military card that he provided. I don't believe that shed a lot of light on where he served. But the judge commented, I think, on the fact that his sister, who lived in San Diego where the hearing was taking place, didn't appear at the hearing to corroborate his allegation that he had deserted and lived with her for four months. And he took that into account as another example supporting his adverse credibility determination. So, in fact, your client didn't provide any corroboration or in response to the IJ's determination that the DHS had a prima facie case, and then he didn't present any evidence other than his testimony to rebut it. The sister's testimony, I don't believe, would have been dispositive to this issue. But it would at least have shown that he did live with her for four months because given that still all we have is his testimony, those were four months in which the Gulf War was ongoing and the brutal suppressions of the Kuwaitis was taking place. So it seems that that would have been at least relevant. I agree it would have been relevant to whether he deserted or not, but she would not have had direct knowledge of his activities within the Republican Guard during the time that he was in service. He was there with her for four months. Yes, I agree. She could have corroborated that, but he didn't call her as a witness. Do you have any evidence that would go against the IJ's finding that the Iraq Republican Guard was entirely composed of volunteers? Other than Mr. Hanna's testimony that he, as part of his compulsory military service, that he was directed into the Republican Guard unit, not that he volunteered for it, but he was moved into that unit. And then while within the Republican Guard, served first in the communications department and then as a baker based on the skills he had acquired in his private life. The legal question is who has the burden and when does it shift? Would you agree with me on that? That is a key issue. I don't believe the DHS had offered any evidence that would shift the burden to Mr. Hanna. It's in a pretty low bar of what they have to prove, and if they have presented evidence that Iraqi Republican Guard is an elite military group comprised entirely of volunteers, as the immigration judges found, isn't that enough to then shift the burden? The evidence that the DHS provided below indicates that the Republican Guard engaged in traditional military functions in protecting Iraq from enemies, both within the country and without, and that in so doing it engaged in indiscriminate, maybe intentional killing of civilians, that the Republican Guard unit as an elite unit protected Saddam Hussein from insurgents as well as from internal military coups, and in doing that they committed atrocities in doing that, but not that it singled out people on account of a protected ground and persecuted them, and that the motivation in doing that was one central reason for that. Do you think the DHS has to prove particular evidence as to your client as opposed to the Iraqi National, Iraqi Republican Guard? Yes, Your Honor, and in comparing this case to the cases where this bar has been applied, there has been direct evidence of someone's involvement in acts of persecution, either through their own testimony or through military records that were obtained, tying that individual to units and battalions that were known to engage in acts of persecution. That went beyond mere membership. Does that have to be done? As I see it, it's a two-prong analysis. The first is, has the government induced sufficient evidence to establish a prima facie case that the persecutor bar may apply? And at that point, is the government required to introduce what I'll call nexus evidence? Is that your argument? Yes, Your Honor, that the DHS, to meet their initial burden, has to prove both that these acts of persecution occurred and that the respondent, the applicant, engaged in acts that would satisfy that nexus definition. And your argument, I think, was that mere presence in the unit is not enough to absent what I'll call nexus evidence to meet the prima facie case. That's not so much my argument as the immigration judge's findings below, at several pages in the record. Well, I'm trying to get clear on what the law is, because I think Judge Boo is right. I think this case turns on who bears the burden of proof, what evidence is required to establish the prima facie case. And at that point, would you agree the burden then shifts to Mr. Hanna to disprove that he was a persecutor contemplated by the bar? I agree that that's the law. And Mr. Hanna's position is that the DHS didn't submit sufficient proof to shift the burden to him, both on the acts of persecution and on the nexus. Can the immigration judge consider the adverse credibility finding and his omission at the refugee interview and sort of his begrudging later acknowledgement that he was in the Republican Guard as evidence at the first stage to establish the prima facie case, or is that only relevant once that prima facie case has been established? That's relevant to whether Mr. Hanna would be able to rebut the presumption, assuming DHS meets its burden. Is there anything that would preclude the IJ from considering all of the evidence in the record? The regulation just says if the evidence indicates that one or more of the grounds for mandatory denial may apply, may apply. So there doesn't seem to be any limitation on the evidence. Where would you find the limitation on what evidence could be considered? The immigration judge had broad discretion what evidence to consider, but there still must be some evidence before the burden would be shifted to Mr. Hanna. And his lack of credibility when he initially provided incomplete testimony at a refugee camp in Turkey, although he later provided further information when his refugee application was initially denied. Would you agree that the Bureau says that mere acquiescence or membership of an organization is insufficient to establish culpability, and if that's true that they presented nothing other than mere membership? I agree that that's correct. And the immigration judge noted at several parts in the record that just belonging to the Republican Guard is not enough to trigger the persecutor bar, and that the judge found that it certainly was possible for someone to serve in the Republican Guard without engaging in acts of persecution. What do we do with the AK-47 testimony? To me, that was very troubling. He says they spent three months training him how to take apart and clean and reassemble an AK-47, but nobody ever showed him how to load or fire it. I find that testimony to be incredible, and I think the IJ did as well. I think given the context of him being a Christian serving in an elite unit that Saddam Hussein relied on to protect himself from even enemies within his own military and government, that it would not be implausible that members of a disfavored group or a minority group like a Chaldean Christian would not receive the training that would then allow them to use the weapons against the regime itself, given that there were already coups that had been attempted. But he admitted that he was trained in at least, I'll call it, maintenance of the Kalashnikov rifle, and he wanted the immigration judge to think that even though he could disassemble, clean, and reassemble it, that he had no idea how to load and fire it. I mean, I could show somebody how to do that in 60 seconds. I agree it may be unusual, but in the context in which it occurred... But isn't that substantial evidence to show that he's lying, that he's trying to minimize his role in the Iraqi Republican Guard, whatever it was? To my knowledge, for the persecutor bar to have been triggered in other cases, it requires more than someone providing incomplete or implausible testimony. But it goes to his attempt to hide from disclosure to the authorities what it was that he actually did in his military service. And then we have to look at his omission in failing to disclose that fact to the BCIS employee who interviewed him initially at the refugee camp. And then this story about, I was trained as a communications operator, but I really spent my five years as a baker. Yes, and the last point, he had trained as a communications operator, and his testimony was that when he was assigned to a communications unit, there were more senior officers and soldiers there that performed the actual communications duties. So there were no telephone operator jobs available. He was waiting his turn. And perhaps he would have gotten it had he not deserted. Do you want to save the rest of your time for rebuttal? Yes, Your Honor, I'll do that. Thank you. We'll hear from the government. Go ahead. May it please the Court. Good morning, Your Honor. Good morning. I move on behalf of the acting assistant attorney, the acting attorney general. I want to, if I could, begin with a law, because immigration is a little bit different from the typical criminal and civil constructs that we're all familiar with. Recall, if we could, that the first question is, is a noncitizen, is an alien removable from the United States? And there, the INA, the Immigration Nationality Act, is clear that the burden is on the government to prove that. Once that's proven, and here the charge was no valid entry documents, then the noncitizen or the alien can then apply for relief from protection or removal. At that point, and the INA is clear, 8 U.S.C. 1229, little a, c, 4a, the burden is on the applicant at all times to prove eligibility for the relief or protection. But the government has the burden initially for the persecutor bar. Is that true? That's not quite correct, Your Honor. What happens is, again, the burden is at all times on the applicant. When the evidence indicates, I think this was Judge Akuta's point, that's at 1240.8d of 8 CFR, the evidence can come from either party. It can come from the government or it can come from the applicant. There is no burden of protection on the government. The goal here. How do you explain what I'm calling prong one, the prima facie showing? I mean, isn't that required of the government before the burden then shifts to the alien to disprove that he was a persecutor? It's not required of the government to produce such evidence. Ordinarily in immigration cases, the evidence comes very frequently from the applicant him or herself. So the question then is, without regard to who bore the burden, is there substantial evidence? Maybe that substantial evidence is not the right word. Is there enough evidence to trigger the prima facie suggestion that the persecutor bar may apply? Precisely, Your Honor. And what have you got for us to articulate what evidence establishes the prima facie case? So matter of NBC, MBC, refers to where the record contains some evidence from which a reasonable fact finder could conclude that one or more grounds for mandatory denial may apply.  So there's the opposing counsel was saying there might be some limitation on the record, the record evidence that could be considered. But I didn't see that in either the regulation or the matter of MBC. So is there, to your knowledge, the IJ can consider everything that's in the record in making this determination? That's precisely my understanding. In fact, the IJ is to consider the entirety of the record when making this analysis. But mustn't that evidence show something beyond mere membership in the Republican Guard? I mean, we've got a lot of discussion in the cases. I think the case law from not only this circuit, but from the Board of Immigration Appeals as well, is fairly clear that mere membership does not suffice. So what evidence is there to tie this individual member of the Iraqi Republican Guard to acts of persecution? We have his lack of credibility in conjunction with the IJ's finding. And the IJ found, what I'm about to say twice, in both decisions, that this Mr. Hanna was hiding his involvement, okay, through his non-credible testimony. That appears on page 48 of the administrative record for the second decision that the IJ issued. And in his first decision at 269 to 270, the IJ found that his lies, his prevarications, his omissions, for example, that he even was a member of the Republican Guard, not only in Turkey when he interviewed with USCIS, but again in the United States when he interviewed with Customs and Border Protection, was all to hide his involvement. One of those lack of credibility determinations involved Mr. Hanna saying he was a regular soldier and the IJ then saying his discharge papers said he was a GMH. Is that correct? Yes. Do you have any idea what a GMH is? The record is not clear. I have none, and if I did have any idea, it would be beyond the record in any event. It's wholly unclear. That said, Your Honor, certainly his repeated lies, his, you know, his implausible testimony regarding his firearms training all speaks to the IJ's point in his finding that he was hiding the evidence of what he truly did in the Republican Guard. And that was enough to shift the burden, if you will, or really to place the additional burden on him to prove by a preponderance of the evidence that the first report does not lie. Is that enough, though? I mean, the cases where we have found nexus include, you know, the translator who participated during interrogation involving torture by electricity as to what the person being tortured was saying, or the Serbian colonel whose unit rounded up 200 Muslims and machine gunned them. We don't have anything close to that on this record. We got a guy at best was either some sort of a communications operator or a baker and somebody who could clean his rifle, even though he didn't know how to fire it. But what else have you got here? I'm scratching my head. Your Honor, we don't know. And if he were, had he credibly testified, look, I was a baker in the Republican Guard, and had the IJ accepted that testimony, then the persecutor bar would not apply. So the prima facie case would not have been made out if he had testified truthfully. The first time he was asked in the refugee camp, what did you do in Iraq if you were in the military? I was a member of the Republican Guard, and I was a baker. And if that testimony were credible, then there would not be evidence to indicate that the persecutor bar may apply. Because there we would say mere membership in the Guard is not enough. And if he was a member but he was a baker and not responsible for or related to the atrocities, that would not be enough to raise the persecutor bar or to apply it. Precisely. Yes, that's quite correct. Here, however, we have somebody who cannot tell the truth really about much of anything at all. And from that, the IJ said, wait a minute, you appear to be hiding what you did with the Guard. And that is enough to cause the shift of burden, if you will, or to put the additional burden is a better way to put it, to put the additional burden on the applicant to prove by preponderance of evidence that the bar does not apply to him. We might not agree about the shifting of the burden thing, but I'll take you back to 6 CFR 1240.8D. Yes, Your Honor. Whether we agree or disagree, is it enough that the ALJ said the Republican Guard is all volunteer and Mr. Hanna says, no, I was conscripted. Is that enough, just that little bit? Because we know it's not a whole lot to shift the burden. Is that enough then? Again, if it may, if the IJ made the finding based on that alone, that he was hiding, and that's really I think a key point in this case, that he was hiding his involvement. But if it were simply I was conscripted and the record evidence, as Your Honor notes, says that these were highly motivated volunteers, absent that finding, that additional finding by the IJ, that the lie was to hide the involvement, that may not be enough. That may be simply a mere membership case. Here, however, we have much more, of course, adverse credibility, and we have the IJ's I think rather pivotal finding that he was hiding what he truly did. Again, having been warned from day one back in Turkey that membership in the Republican Guard might result in his not being eligible for asylum and any other relief that he sought. Counsel, would your case be strengthened if he had been confronted at the merits hearing with a question on cross-examination? Isn't it true that you were involved in the torture of innocent citizens while you were in the Iraqi Guard? And he denied that. And then the immigration judge found that he was not credible. Would the government be entitled to an adverse inference based on that false denial that the truthful answer was yes? If that additional question had been made and if the IJ found specifically as to that point, I think that the case would be strengthened, certainly. But the government didn't confront him in that manner, did they? The government didn't, but it didn't have to here. Again, it was rather clear from all the way through that he was first unwilling to admit his membership, not only in Turkey but again once he arrived in the United States. He was found not credible as to what he did do with the Republican Guard. He was found not credible with respect to his weapons training and so on down the line, Your Honor. And that is substantial evidence supporting the IJ's finding that he was lying about what he truly did. But the problem is that the record doesn't, other than sort of generally knowing that the Guard engaged in atrocious acts, how does that go beyond mere membership? Even if we take all of those points in favor of the finding that he was lying about everything, where is the nexus that ties him individually to some act of persecution? If I could try to draw an analog from civil litigation and even in immigration cases, when an applicant such as Mr. Hanna, were he to assert his Fifth Amendment right against self-incrimination in immigration court, it is permissible under Gutierrez v. Holder and in other cases to draw an adverse inference against the applicant. Even though there is no evidence as to whether that person committed the criminal activity, an inference is permitted, again, when the assertion of a constitutional right. Here, the inference is based on his lies, Your Honor, his lies right down the line as to what he did. But doesn't that require the immigration judge to presume that every member of the 80,000-man Republican Guard engaged in atrocious behavior? It does not, Your Honor. Again, that comes back to the point that had Mr. Hanna come to immigration court and testified credibly, I was a member of the Republican Guard, I was a baker, I washed dishes, etc. I did receive combat training, but I never was called upon to use it because I was back in the kitchen baking bread. That's correct. If that were credible, there would be no persecutor bar issue. It would be a mere membership case, and we wouldn't be here now. But this is not that case. The BIA didn't present any evidence that the alien's role was material or integral to the persecution. Is that fair? That's fair, Your Honor. So if, I think, opposing counsel acknowledged that Mr. Hanna didn't present any evidence other than his non-credible testimony and, I guess, the military booklet, what sort of evidence, if Mr. Hanna had been able to try to rebut it, would there have been evidence that could have rebutted it once there's an adverse credibility determination? What would that be? I think one example would be had his sister testified and said, look, here's when the atrocities occurred, and he was living with me, and had she been found, had she testified at all, is step one. And step two is, had she been credible, that would have been sufficient, Your Honor. But that was only a four-month period out of five years. And doesn't the record show that there were atrocities committed both before and after the four-month period? It does, Your Honor. That's an example of how he would have testified. So that doesn't really exculpate him because he still has to explain another four years and eight or nine, seven or eight months of service. Yes, and again, the best way would have been to provide credible testimony, and that did not occur here. Your Honor, if there are no further questions, I submit on the brief and ask the Court to deny the petition. Thank you. Thank you, Your Honor. We have a minute for rebuttal. The adverse credibility finding alone is not sufficient to trigger the bar. There needs to be some positive or affirmative evidence of a nexus to the persecutory acts. So the opposing counsel says an adverse inference is fair to raise from his evasions and misstatements. Not in this case, Your Honor. The adverse credibility finding is based in part on the first time he ever had a chance to explain, give an account for his life in Iraq was when he applied for refugee status in Turkey. And his first statements to the refugee agency there did not disclose his Republican Guard service. Though by the end of that process, he did. He provided his military booklet and more information to the refugee agency. So there was another lie, was there not? Later on, he denied knowing why his initial application in the refugee camp had been denied, and it was because he'd failed to disclose his military service? When he gave a sworn statement to a CBP officer at the port of entry when he came in to apply for asylum. So a statement not to an asylum officer but to a border patrol agent. But it's still a prior inconsistent statement that the fact finder can consider, is it not? He did provide an incomplete accounting of his military service and his past. No, he denied knowing why he had been denied immigration benefits after his refugee interview. He did, though he did put the officer on notice that there was a refugee application that was part of the government's record that could be accessed, and that he had served in the military. And it may be that he didn't know the exact reason why. The denial decision that he did later present to the immigration court is in English, and it's not clear if he knew exactly why his application was denied, the technical reason. It would be a very different case if that was the only basis for the adverse credibility finding, but the problem here is that we have more than one. I do think it's important to note that all the evidence of his military service in Iraq came from him, that there's no evidence that he didn't provide. Had he not disclosed the military booklet or the detailed accounting of his time in the military, there would be none of that in the record. Do you know what GMH means? I don't, Your Honor. And I think further complicating it is that it's a translation from the original Arabic and it may be a technical term that doesn't translate well from Arabic into English. I see my time is up. Thank you. Thank you. And the case of Hannah v. Whitaker is submitted.
judges: Tallman, Ikuta, Bough